UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

CALIFORNIA DEPARTMENT OF TOXIC
SUBSTANCES CONTROL,

    Plaintiff,

  v.                                          NO. CIV. S-02-2389 LKK/DAD

PAYLESS CLEANERS; COLLEGE
CLEANERS; HEIDINGER CLEANERS;
NORGE VILLAGE CLEANERS; CAVA,
INC., a California corporation;
LOBDELL CLEANERS; CITY OF CHICO;
NORVILLE R. WEISS; JANET L. WEISS;
PAUL A. TULLIUS; VICTORIA TULLIUS;
ROBERT H. HEIDINGER; INEZ N.            O R D E R
HEIDINGER; 5TH AND IVY, a general
partnership; RICHARD C. PETERS and
RAMONA W. PETERS, individually and
as Trustees of the Peters Family
Trust; BETTY M. ROLLAG; RANDALL
ROLLAG; and TAMI ROLLAG,

    Defendants.
_____/
AND RELATED COUNTER-CLAIMS.
_____/

    Third party plaintiffs Richard W. Peters and Ramona A. Peters
(the "Peters") individually and collectively as Trustees of the

1

Peters Family Trust have brought claims for contribution and indemnity pursuant to CERCLA, 42 U.S.C. §§ 9601 et seq., as well various state law claims against third-party defendant Maytag Corporation ("Maytag") and Fedders Corporation ("Fedders") (collectively, "defendants"). Pending before the court is Maytag and Fedders' motion for summary judgment on several of the Peters' state law claims. Defendants assert that the state law claims are barred by the statute of limitations. The court resolves the matter upon the parties' papers and supplemental briefing, and after oral argument. For the reasons set forth below, the court grants the motion with respect to the Peters' negligence, negligence per se, and strict liability claims and denies the motion with respect to the Peters' nuisance per se claim.

## I. Background

**A. General Background**

The Peters are the original defendants in an action arising out of a two-mile wide perchloroethylene ("PCE") "plume" located in the city of Chico, California. Defs.' Statement of Undisputed Facts ("SUF") ¶¶ 1-4. On October 31, 2002, the California Department of Toxic Substances Control ("DTSC") filed a cost recovery action against various individuals and companies, including the Peters, alleging claims under the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), 42 U.S.C. §§ 9601 et seq., and under state law. Defs.' SUF ¶¶ 1-2. The Peters are the owners of property in the City of Chico from which hazardous substances, including PCE, were allegedly released

when a dry cleaning business operated on the property. Defs.' SUF ¶ 4.

Upon being sued, the Peters filed a third party complaint against various entities, including Maytag and Fedders. The complaint alleges several claims for relief, including indemnity and contribution pursuant to CERCLA. Pending before this court is Maytag and Fedders' motion for summary judgment on four of the Peters' state law claims: (1) strict products liability, (2) negligence, (3) negligence per se, and (4) nuisance per se. Maytag and Fedders contend that each claim is barred by the statute of limitations.

**B. Facts**

On October 11, 1989 the Department of Health Services[1] (the "Department") sent a letter to the Peters, which stated, in part:

> [Y]our facility was found to contain Perchloroethylene (PCE) in high concentrations in the soils. Information collected by DHS indicates that PCE was used as a solvent in the dry cleaning operations . . . As a result of our investigation, DHS has concluded that PCE has been improperly disposed of as a hazardous waste, and it may have migrated off site into wells formerly used for Chico's drinking water supply.

Defs.' SUF ¶ 15, Decl. of Richard Crites ("Crites Decl."), Ex. N. The Peters responded to the Department via a letter dated October 19, 1989, which stated, in part: "I look forward to meeting with you in the near future concerning the presence of . . . PCE in the

---

[1] The Department of Health Services later became the Department of Toxic Substance Control, plaintiff in the underlying action against the Peters.

3

soil." Crites Decl., Ex. O.

From January to October of 1990, the Peters and the Department exchanged a series of letters regarding disposal and cleanup of the PCE. Defs.' SUF ¶¶ 19-25. These communications culminated in a determination by the Department that the Peters were in non-compliance with a Remedial Action Order imposed by the Department. Defs.' SUF ¶ 25.[2] In an about-face, however, the Department determined in 1996 that the Peters' property "posed no significant threat to public health, welfare or the environment." Pls.' SDF ¶ 6.

**C. Procedural History**

On October 31, 2002, DTSC initiated the underlying action, in which the Peters are defendants. Defs.' SUF ¶¶ 1-3. On December 2, 2003, the Peters filed a first amended third party complaint. Defs.' SUF ¶ 5. Among the named third party defendants was Maytag Corporation. Defs.' SUF ¶ 6. Maytag filed a motion to dismiss, which this court granted on May 3, 2004. Defs.' SUF ¶ 7. The Peters filed a second amended third party complaint on Maytag on June 1, 2004, Defs.' SUF ¶ 8. Maytag filed a subsequent motion to

---

[2] The Peters do not dispute that these 1989-1990 communications took place. Pls.' Response to Defs.' SUF ¶¶ 15-27. Rather, they allege that the communications referred to "a separate and distinct area of contamination unrelated to the contamination at issue in the instant case." Pls.' Response to Defs.' SUF ¶¶ 15-27; Pls.' Statement of Disputed Facts ("SDF") ¶ 4. Specifically, the Peters maintain that the present litigation concerns contamination of the "Southwest plume" in Chico, California, whereas DTSC once believed the Peters' property contributed to the "Central plume" in Chico. Pls.' SDF ¶¶ 1-3. Apparently, there was separate litigation regarding the Central plume, in which the Peters were not named as defendants. Pls.' SDF ¶ 5.

4

dismiss, which this court granted in part and denied in part on March 7, 2005. Defs.' SUF ¶ 9.

In that latter order, the court, sua sponte, addressed the issue of whether plaintiffs had pled the existence of cognizable injury. Based on case law in existence at that time, the court held that there was a distinction between the mere presence of PCE, which would not give rise to suit, and the contamination of property by PCE, which would. This "mere presence" versus "contamination" distinction was based upon precedent from asbestos cases holding that only contamination of property (e.g., the release of asbestos fibers into the environment), not the mere presence of asbestos (e.g., asbestos in walls), constitutes the physical damage necessary for accrual of negligence and strict liability claims in California. San Francisco Unified Sch. Dist. v. W.R. Grace & Co., 37 Cal. App. 4th 1318, 1335 (1995). As explained below, however, that distinction in California case law has subsequently been eroded.

**II. Standard**

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); see also Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Secor Ltd. v. Cetus Corp., 51 F.3d 848, 853 (9th Cir. 1995).

Under summary judgment practice, the moving party

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); see also First Nat'l Bank of Ariz. v. Cities Serv. Co.,

6

391 U.S. 253, 288-89 (1968); Secor Ltd., 51 F.3d at 853.

In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11; see also First Nat'l Bank, 391 U.S. at 289; Rand v. Rowland, 154 F.3d 952, 954 (9th Cir. 1998). The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Owens v. Local No. 169, Ass'n of Western Pulp and Paper Workers, 971 F.2d 347, 355 (9th Cir. 1992) (quoting T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987)), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Anderson, 477 U.S. 248-49; see also Cline v. Indus. Maint. Eng'g & Contracting Co., 200 F.3d 1223, 1228 (9th Cir. 1999).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." First Nat'l Bank, 391 U.S. at 290; see also T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings

7

and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments); see also Int'l Union of Bricklayers & Allied Craftsman Local Union No. 20 v. Martin Jaska, Inc., 752 F.2d 1401, 1405 (9th Cir. 1985).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Rule 56(c); see also In re Citric Acid Litig., 191 F.3d 1090, 1093 (9th Cir. 1999). The evidence of the opposing party is to be believed, see Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, see Matsushita, 475 U.S. at 587 (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) (per curiam)); see also Headwaters Forest Def. v. County of Humboldt, 211 F.3d 1121, 1132 (9th Cir. 2000). Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).

Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"

Matsushita, 475 U.S. at 587 (citation omitted).

**III. Analysis**

**A. Strict Products Liability, Negligence, and Negligence Per Se**

Maytag and Fedders argue that the bulk of the Peters' state law claims are barred by the statute of limitations. In California, the statute of limitations for claims based on injury to real property is three years. Cal. Code of Civ. P. § 338(b).[3] The initial question before the court is when the causes of action accrued, and the limitations period commenced, on the claims at issue.

The statute of limitations for tort actions "begins to run upon the occurrence of the last event essential to the cause of action." Wilshire Westwood Assoc. v. Atlantic Richfield Co., 20 Cal. App. 4th 732, 739 (1993). Damages are an essential element to claims in tort; accordingly, the statute of limitations does not begin to run until this element is satisfied. San Francisco Unified Sch. Dist., 37 Cal. App. 4th at 1326 (1995) ("the statute of limitations does not begin to run and no cause of action accrues in a tort action until damage has occurred").

For claims of strict liability or negligence, "the compensable injury must be physical harm to persons or property,

---

[3] The parties do not dispute that Cal. Code Civ. P. § 338(b) provides the appropriate limitations period. The parties do dispute, however, whether the California discovery rule or the federal discovery rule in CERCLA, 42 U.S.C. § 9658(b)(4)(A), should apply in tolling the limitations period. Nevertheless, the court need not resolve this issue because whether a cognizable injury has occurred at all is dispositive of the claims addressed in this section.

9

not mere economic loss." San Francisco Unified Sch. Dist., 37 Cal. App. 4th at 1327 (citing Seely v. White Motor Co., 63 Cal. 2d 9 (1965) (strict liability), Sacramento Regional Transit Dist. v. Grumman Flxible 158 Cal. App. 3d 289, 294, 298 (1984) (negligence)).

In SFUSD, the First Appellate District held that asbestos caused physical harm to property when it reached the level at which it becomes a risk to human health. 37 Cal. App. 4th at 1318. Accordingly, the court stated:

> [W]e hold that in an asbestos-in-building case, the mere presence of asbestos constitutes only a threat of future harm. Contamination by friable asbestos is the physical injury, and the actual, appreciable harm that must exist before a property owner's strict liability or tort cause of action . . . accrues.

San Francisco Unified Sch. Dist., 37 Cal. App. 4th at 1335. Reasoning by analogy, this court held in its March 2005 order that the Peters had sufficiently alleged the "contamination" of their property by PCE, rather than the mere presence of PCE.

In Aas v. Superior Court, however, the California Supreme Court contradicted the reasoning of SFUSD, rejecting the notion that the relevant inquiry is whether or not there is significant risk to human health. 24 Cal. 4th 627 (2000). In Aas, negligence and strict liability claims were brought by homeowners against the developers and contractors responsible for building their homes. 24 Cal. 4th at 633. The plaintiffs alleged that "their dwellings suffer[ed] from a variety of construction defects" that threatened the health and safety of residents, but acknowledged "that many of the defects . . .

10

ha[d] not actually caused property damage." Id. They also sought damages for the cost of repairing the alleged defects and the diminution in value of their residences. Id. The Court, however, rejected plaintiffs' argument that defects posing risk of harm to humans constituted cognizable physical injury to property. Id.

Following the California Supreme Court's line of reasoning in Aas, the Sixth Appellate District held in County of Santa Clara v. Atlantic Richfield Co. that the presence of lead paint, although posing an "unreasonable danger to human beings," is not a cognizable injury to property for the purposes of accrual of a negligence or strict liability cause of action. 137 Cal. App. 4th 292, 324-25 (2006). Instead, plaintiffs must allege that the lead paint threatened the buildings themselves with physical injury. Id. ("[Plaintiffs] have made no allegations that the deteriorated lead paint even threatens *the buildings themselves* with physical injury. They have not alleged that deteriorated lead paint causes the walls or floors of the structure to themselves deteriorate or in any other way causes damage to the physical components of plaintiffs' buildings.").[4]

While County of Santa Clara involved lead poisoning, the court noted that its reasoning would also apply to asbestos

---

[4] The court was careful to cabin this holding -- which applied only to building owners -- from individuals who were actually poisoned by lead. For them, the court held that they "might have a viable negligence or strict liability cause of action that is not vulnerable to a statute of limitations defense." County of Santa Clara, 137 Cal. App. 4th at 324-25.

11

cases. In order to state a negligence or strict liability claim in that context, the court explained, plaintiffs must allege that asbestos fibers damaged other components of the buildings. Id., 137 Cal. App. 4th at 325. The court did not expressly disagree with the outcome in SFUSD, because the plaintiffs in that case had alleged physical damage, and the court found it at least theoretically possible that asbestos fibers might physically damage a building. County of Santa Clara, 137 Cal. App. 4th at 325, n.13. Outside of this remote possibility, however, County of Santa Clara is squarely at odds with the holding in SFUSD.

The cases cited by the Peters do not show that contamination -- which, as the court employs the term here, refers to a risk of injury to human health, and/or a condition requiring abatement or clean-up -- is equivalent to property damage. First, the Peters cite to cases arising from insurance disputes in which the term "property damage" was interpreted to encompass environmental contamination. See, e.g., Monstrose Chem. Corp. v. Superior Court, 6 Cal. 4th 287, 303 (1993) (finding that "environmental contamination under CERCLA is 'property damage.'"); Aiu Ins. Co. v. Superior Court, 51 Cal. 3d 807, 842 (1990). The problem, however, is that these courts were interpreting contracts and therefore not constrained by the economic loss rule that governs tort claims. Second, the other cases cited by the Peters merely rely upon the presence versus contamination distinction set forth in the asbestos cases. See,

e.g., Transwestern Pipeline Co. v. Monsanto Co., 46 Cal. App. 4th 502, 526-37 (1996).

In the case at bar, defendants argue that the Peters' negligence and strict liability claims are barred by the statute of limitations. In light of the recent development in California authority, however, it appears that the opposite is true: far from being stale, plaintiffs' claims have not accrued at all, because they have not alleged, and cannot allege, the existence of a cognizable physical injury to their property.

In their complaint, the Peters allege that as a proximate cause of defects in dry cleaning solvents and machinery as well as defendants' negligence, the Peters have suffered "damages including but not limited to diminution in value of the property, lost profits, response costs incurred and to be incurred in the future to properly respond to the alleged PCE contamination in and around the property, and related costs in making the property safe from contamination," TAC ¶ 37, as well as "attorneys' fees and consultants' fees . . . and related costs," TAC ¶ 42.

Lost profits and diminution in property value unconnected to physical injury are clearly economic losses, and therefore are not compensable under negligence or strict liability theories. See Aas, 24 Cal. 4th at 639 (finding diminished value of residences containing hazardous defects not compensable).

Similarly, the cost of removing hazardous substances and

13

their remediation are economic costs -- not physical injuries to property.  See County of Santa Clara, 137 Cal. App. 4th at 292 (determining that no cause of action for negligence or strict liability had accrued where plaintiffs claimed the following damages: "costs incurred to inspect and test property and the environment for the presence of lead; [] costs incurred to . . . investigate and respond to lead-contaminated properties . . . ; and [] costs incurred for . . . abatement, removal, replacement, and/or remediation of lead in . . . properties").

The Peters have failed to plead the existence of damage to any physical component of their land, and they have not shown that they could allege that PCE physically injured their property.  Accordingly, the Peters' claims for negligence, negligence per se, and strict liability have not accrued as a matter of law and are hereby dismissed.

**B. Nuisance Per Se**

Maytag and Fedders have also raised a statute of limitations defense in response to the nuisance per se claim, which merits separate discussion.

The Peters allege that the defendants' actions are a nuisance as defined in California Water Code § 13050(m).  That section provides that a nuisance is anything that "[is] injurious to health, or is indecent or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property."  Cal. Water Code § 13050(m)(1).  Pollution of water constitutes a

public nuisance and becomes a public nuisance per se when the pollution occurred as a result of discharge of waste in violation of California Water Code §§ 13000 et seq. See Cal. Dep't Toxic Substances Control v. Payless Cleaners, 368 F. Supp. 2d 1069, 1081 (E.D. Cal. 2005). In addition, where a public nuisance causes an injury to private property, as alleged here, a claim may be brought for private nuisance. Id.

Defendants argue that because the nuisance per se claim references Water Code §§ 13000 et seq., it is governed by the three year statute of limitations that applies to claims brought under those sections of the Water Code, namely California Code of Civil Procedure § 338(i).[5] The Peters contend that because their nuisance claim alleges a continuing nuisance, the statute of limitations does not begin to run so long as the nuisance continues.

As an initial matter, defendants' contention that Section 338(i) provides the applicable statute of limitations is incorrect. For nuisance per se claims, the applicable statute of limitations is that which would otherwise govern the underlying nuisance or negligence claim, not that which governs

---

[5] California Code of Civil Procedure § 338(i) provides:

Within three years:

(i) An action commenced under the Porter-Cologne Water Quality Control Act (Division 7 (commencing with Section 13000) of the Water Code).

15

the statute providing the standard of care.[6]  Here, the distinction is somewhat immaterial, because the statute of limitations for ordinary nuisance claims is also three years. Cal. Code Civ. P § 338(b).

The Peters' claim, however, is not an ordinary nuisance claim.  Rather, the nuisance per se claim is continuing in character.  Where a nuisance is continuing, plaintiffs may file an action for continuing nuisance at any time before the nuisance is abated.  Jordan v. City of Santa Barbara, 46 Cal. App. 4th 1245, 1256 (1996) ("[P]ersons harmed by [continuing nuisance] may bring successive actions for damages until the nuisance is abated"); see also Mangini v. Aerojet-General Corp., 12 Cal. 4th 1087, 1097-98 (1996).  Once the nuisance is abated, the statute of limitations begins to run.  See Chevron U.S.A. v. Superior Court, 44 Cal. App. 4th 1009, 1017 (1994) (finding that where a three year statute of limitations applies, an action for continuing nuisance is timely if it "has been filed before abatement of the nuisance . . . or within three years after abatement").

In the case at bar, plaintiffs clearly allege that the contamination is "continuing and abatable."  TAC ¶ 50.

---

[6] See Rivas v. Safety-Kleen Corp., 98 Cal. App. 4th 218, 229 (2002)("[I]n ruling upon the applicability of a statute of limitations . . . courts will look to the nature of the rights sued upon rather than to the form of action"); Adobe Lumber, Inc. v. Hellman, 415 F. Supp. 2d 1070, 1079 (E.D. Cal. 2006) (holding negligence per se claim based on contamination of real property barred under the three year statute of limitations provided by Cal. Code Civ. P. § 338(b) for injury to real property rather than the statute referenced by the claim).

16

Defendants do not dispute the Peters' characterization of the nuisance as continuing.  Neither do defendants allege nor provide evidence that the nuisance has been abated. Accordingly, because plaintiffs' claim has been brought prior to abatement of the nuisance, it is not barred by the statute of limitations.

### IV. Conclusion

For the reasons set forth above, Maytag and Fedders' motion for summary judgment is GRANTED with respect to the negligence, negligence per se, and strict liability claims.  The motion is DENIED with respect to nuisance per se claim.

IT IS SO ORDERED.

DATED:  August 16, 2007.

/s/ Lawrence K. Karlton
LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT