UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

CALIFORNIA DEPARTMENT OF TOXIC
SUBSTANCES CONTROL,

    Plaintiff,

  v.                                            NO. CIV. S-02-2389 LKK/DAD

PAYLESS CLEANERS; COLLEGE
CLEANERS; HEIDINGER CLEANERS;
NORGE VILLAGE CLEANERS; CAVA,
INC., a California corporation;
LOBDELL CLEANERS; CITY OF CHICO;
NORVILLE R. WEISS; JANET L. WEISS;
PAUL A. TULLIUS; VICTORIA TULLIUS;
ROBERT H. HEIDINGER; INEZ N.          O R D E R
HEIDINGER; 5TH AND IVY, a general
partnership; RICHARD C. PETERS and
RAMONA W. PETERS, individually and
as Trustees of the Peters Family
Trust; BETTY M. ROLLAG; RANDALL
ROLLAG; and TAMI ROLLAG,

    Defendants.
                                      /
AND RELATED COUNTER-CLAIMS.
                                      /

    This case is a cost recovery action initiated by the California Department of Toxic Control Substances ("DTSC")

against various individuals and entities allegedly responsible for the release of hazardous substances discharged in the course of operating a dry cleaning business. The Peters, one of the original defendants in this action, filed suit against various third-party defendants, including Borg-Warner Corporation. On August 3, 2007, the court granted a motion to dismiss filed by Burns International Services Corporation ("Burns"), who claimed that they were improperly served as Borg-Warner Corporation due to a confusion in the corporate histories of the companies. Pending before the court is a motion for reconsideration filed by DTSC, who was not a party to the Peters' motion to dismiss but who claims that the factual and legal conclusions set forth in the court's order will potentially hamper the factual development of the history of the Borg-Warner entities in other forums. For the reasons set forth below, the motion for reconsideration is, somewhat reluctantly, granted.

## I. Procedural History

On August 3, 2007, the court granted a motion to dismiss filed by Burns. Specifically, the court found that the Peters had not sufficiently demonstrated that the entity it served, Burns, was the Borg-Warner Corporation alleged in the complaint to have operated the Norge Division that manufactured dry cleaning machinery in the 1960s.

The rationale behind the court's ruling was that, based on the evidence submitted, there appeared to be two Borg-Warner Corporations, in existence at two different times, but only one

of which was the Borg-Warner Corporation alleged in the complaint to have operated Norge Division in the 1960s. Accordingly, the court held that "[b]ased on the evidence submitted, [] it is clear that Burns is not a successor-in-interest to the Borg-Warner Corporation that operated the Norge Division."[1] Order at 2:18-20.

The picture of the corporate histories described by Burns, and subsequently adopted by the court, was as follows. First, the Borg-Warner Corporation that operated Norge Division in the 1960s ceased to exist in 1987, when it merged into BW-Transmissions & Engine Components Corporation, with BW-Transmissions & Engine Components Corporation as the surviving entity. That surviving entity is now known as BorgWarner Morse Tec Inc. and, according to the court's August 3, 2007 order, was the party that the Peters should have served.

Second, the court found that the party that the Peters actually served, Burns, also had a Borg-Warner Corporation in its corporate family tree, but that this was not the Borg-Warner

---

[1] While it should be apparent that, read as a whole, the court's findings and conclusions were limited to the record before it, portions of the court's order could be quoted out of context as conclusively resolving the relationship between Burns and the Borg-Warner Corporation that operated Norge Division. E.g., Order at 2:24-26 ("Here, Burns is not bound by a continuous chain to the Borg Warner Corporation that operated Norge Division."); Id. at 2:26-3:4 ("While Burns was also once named 'Borg Warner Corporation,' its corporate chain of existence is wholly separate from the chain containing the Borg Warner Corporation alleged in the complaint to have operated Norge Division."); Id. at 5:13-15 ("In short, Burns is not a successor-in-interest to the Borg-Warner Corporation that operated Norge Division, and is therefore not a proper party to this action.").

3

Corporation which controlled Norge Division in the 1960s. Rather, the court observed, based on the record before it, that Burns' corporate existence did not even begin until February 1987, which was 17 years after the facts alleged in the complaint. At that time, the corporation was known as AV Holdings Corporation,[2] which underwent a series of name changes, including a change to Borg-Warner Holdings Corporation in May 1987, Borg-Warner Corporation in 1988, Borg-Warner Security Corporation in 1993, and finally, Burns International Services Corporation in 1999. The picture of the corporate histories painted by Burns was supported by, inter alia, certificates of incorporation provided to the court.

Now, DTSC has filed a motion for reconsideration of the court's August 3, 2007 order on the basis that the factual record before the court was incomplete and one-sided. DTSC does not seek that the court reverse its dismissal of Burns from this action; DTSC maintains that the court's dismissal of Burns was proper because the Peters had not met their burden of showing that they had effected service on the successor to the Borg-Warner Corporation that operated Norge Division.

Rather, DTSC only requests that the court retract its factual and legal conclusions pertaining to the corporate histories of the Borg-Warner entities. DTSC states that it "has an interest in ensuring that the record that emerges from this

---

[2] This was erroneously referred to earlier as "AV Hastings Corporation" in the court's August 3, 2007 order.

4

case is clear and accurate and does not unduly complicate litigation in other courts," Mot. at 3, as "DTSC anticipates that it may be involved in future CERCLA litigation regarding those other Norge drycleaners," Mot. at 4. The Peters have joined in DTSC's motion.[3]

**II. Standard**

DTSC and the Peters' motion for reconsideration is brought pursuant to Federal Rule of Civil Procedure 54(b). Pursuant to that rule, "a district court can modify an interlocutory order at any time before entry of a final judgment." Credit Suisse First Boston Corp. v. Grunwald, 400 F.3d 1119, 1124 (9th Cir. 2005) ("[W]e have long recognized the well-established rule that a district court judge always has power to modify or to overturn an interlocutory order or decision while it remains interlocutory.").

Reconsideration is generally appropriate where (1) a party presents the court with newly discovered evidence, (2) the court committed clear error or the initial decision was manifestly unjust, or (3) there has been an intervening change in controlling law.[4] See Sch. Dist. No. 1J, Multnomah County,

---

[3] The Peters have not requested that the court reverse the dismissal of the Burns. Accordingly, they only request the same relief desired by DTSC, i.e., the removal of the court's factual and legal conclusions concerning the corporate histories of the Borg-Warner entities.

[4] While this standard has been applied most often in the context of Rule 59(e) and Rule 60(b) motions, it also provides guidance to Rule 54(b) motions. See Doctor John's, Inc. v. city of Sioux City, IA, 456 F. Supp. 2d 1074, 1076 (N.D. Iowa 2006)

5

Oregon v. AC&S, Inc., 5 F.3d 1255, 1263 (9th Cir. 1993); see also Nunes v. Ashcroft, 375 F.3d 805, 807 (9th Cir. 2003). Nevertheless, because a previous decision constitutes the law of the case, a court should generally not upset one of its previous decisions absent a showing that it either represented clear error or would work a manifest injustice. Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 817 (1988). As will become apparent, while the original order contained over-broad language, it is not clear that manifest injustice will follow. Nevertheless, preventing future confusion probably justifies the court's order.

### III. Analysis

**A. Propriety of Motion**

As an initial matter, Burns argues that DTSC and the Peters have failed to demonstrate why they did not show the facts and circumstances that purport to justify reconsideration "at the time of the prior motion." L.R. 78-230(k). Pointedly, Burns argues that the evidence attached to the motion for reconsideration (e.g., newspaper articles) was publicly available at the time of the motion to dismiss. Furthermore, Burns points out that DTSC could have contributed to the record at that point in time but elected not to do so.

---

("While the standards for reconsideration of interlocutory orders may be less 'exacting' than the standards for reconsideration of final orders under Rules 59(e) and 60(b), . . . the court should 'look to the kinds of consideration under those rules for guidance.') (internal citations omitted).

6

As this court recently observed in Lyons v. Baughman, there may be occasions on which evidence that could have been obtained at the time of an earlier motion may nevertheless be considered in a motion for reconsideration. See Lyons v. Baughman, 2007 WL 1378022, *3 (E.D. Cal. 2007) ("While this evidence could have been obtained in the first instance, and the present motion denied on those grounds, the court finds that the interests of justice would be better served by resolving the motion on the merits."). In Lyons, the court considered "new" evidence that could have been uncovered earlier with due diligence; it did so because the plaintiff, an inmate, had obtained counsel after the initial motion, and it would be self-defeating to appoint counsel but then deny plaintiff the benefit of that representation.

Here, if the only interests adversely implicated by the court's August 3, 2007 order were those of the Peters, the new evidence presented by the motion for reconsideration might well and properly be disregarded. But that is not the case. As DTSC contends, the court's August 3, 2007 order may be misconstrued by future courts (or, perhaps more likely, quoted out of context by an attorney) as a definitive resolution of the liabilities of Borg-Warner entities and therefore injure the interests of future plaintiffs. In addition, future courts will not know what was in the record before this court when it resolved the motion; indeed, they may presume that because the posture was a motion to dismiss, no evidence exists to support even a prima

facie case for Burns' liability.  While DTSC could have elected to contribute to the record during the pendency of Burns' motion, it is fair to note that they were not the party obligated to oppose it.

Accordingly, the court finds that, as in <u>Lyons</u>, the interests of justice would be better served by resolving the motion on the merits.  Nevertheless, the court must emphasize that it is only because of the court's overriding concern for prejudice to future litigants, which is unique to the facts of this case, that it is willing to disrupt the substantial weight typically afforded to the finality of court orders.

**B. New Evidence**[5]

In short, DTSC argues that although Burns believes that there are two separate corporate chains for purposes of liability, there is, in fact, only one complex, interrelated chain.  As explained below, DTSC claims that (1) Burns is a direct descendent of the Borg-Warner Corporation that operated Norge Division, and (2) BorgWarner Morse Tec Inc. (the party identified by the court in its August 3, 2007 order as the entity that the Peters should have served) was itself spun off from the company that is now called Burns.  DTSC bases these

---

[5] Even without the aid of new evidence, the court would have no objection to granting the limited relief requested by DTSC: that is, the court now clarifies that its August 3, 2007 order was not intended to definitively resolve the liabilities of the Borg-Warner entities.  Rather, it was necessarily based on the limited factual record presented by the parties to Burns' motion to dismiss, and should not be construed as once and for all absolving the liability of any entity.

8

assertions on information obtained through publicly available sources, such as newspaper articles reporting on various corporate events that occurred in the companies' histories.

First, DTSC claims that Burns is a descendent of the Borg-Warner Corporation that operated Norge Division because AV Holdings Corporation, which Burns claims as its own corporate ancestor, also owned that same Borg-Warner Corporation. Sometime in the middle of 1987, the Borg-Warner Corporation that operated Norge Division was purchased by Merrill Lynch Capital Partners for $4.23 billion in a leveraged buyout. To do so, Merrill Lynch formed AV Holdings Corporation and its subsidiary, AV Acquiring Corporation, so that Borg-Warner Corporation would in turn be a wholly owned subsidiary of AV Acquiring Corporation. In other words, DTSC argues that Burns (in its previous incarnation, as AV Holdings Corporation) at one time owned the Borg-Warner Corporation that operated Norge Division as a subsidiary.

Burns responds, as an initial matter, that a parent is not generally responsible for the acts of its subsidiaries. See, e.g., United States v. Bestfoods, 524 U.S. 51, 61 (1998). Furthermore, Burns argues that it is undisputed that on the last day of 1987, the Borg-Warner Corporation that operated Norge Division was merged into BW-Transmissions & Engine Components Corporation, now known as BorgWarner Morse Tec Inc. Upon merger, "all debts, liabilities and duties of the respective constituent corporations shall thenceforth attach to said

surviving or resulting corporation." Del. Code § 259(a). DTSC does not dispute that BorgWarner Morse Tec Inc. directly descended from the Borg-Warner Corporation that operated Norge Division and that BorgWarner Morse Tec Inc. inherited Borg-Warner Corporation's liability.[6]

Rather, DTSC maintains that both BorgWarner Morse Tec Inc. and Burns are liable. DTSC argues that the merger did not necessarily absolve the remaining corporate entities (that is, those other than what is now BorgWarner Morse Tec Inc.) of liability, and that there are exceptions to the legal firewall that generally exists between corporate parents and subsidiaries. For example, DTSC argue that there are various legal theories, such as veil piercing, mere continuation, and express/implied assumption of liability, under which Burns might have succeeded to the CERCLA liability of the Borg-Warner Corporation that operated Norge Division. Clearly, the court's August 3, 2007 order, which granted a motion to dismiss, did not address, let alone resolve, any of these alternate theories of liability.

Second, DTSC maintains that BorgWarner Morse Tec Inc. was itself directly spun off from the company that is now known as Burns. In 1993, Borg-Warner Corporation (the second Borg-

---

[6] It is unclear whether DTSC believes that BorgWarner Morse Tec Inc. should be liable because of the 1987 merger or because of liability derivatively inherited from Burns. DTSC Reply at 10 ("BorgWarner Morse Tec Inc. is also a successor to the Borg-Warner Corporation that operated the Norge Division, since BorgWarner Morse Tec. Inc. was itself spun off from Burns in 1993").

10

Warner, previously known as AV Holdings Corporation and as Borg-Warner Holdings Corporation) split its two major units -- automotive and security services -- into two separate companies. Borg-Warner Corporation first changed its name to Borg-Warner Security Corporation (now known as Burns), and then, eight days later, spun off Borg-Warner Automotive, Inc. as a subsidiary. BorgWarner Morse Tec Inc. is, in turn, a subsidiary of Borg-Warner Automotive, Inc. In other words, DTSC argues that Burns was a parent to an entity (Borg-Warner Automotive, Inc.) that was a parent of BorgWarner Morse Tec Inc. -- the one party (although perhaps not the only party) that both sides agree succeeded to the CERCLA liability of the Borg-Warner Corporation that operated Norge Division.

Burns responds that it, as well as AV Holdings Corporation, always remained legal entities separate from their subsidiaries (including the Borg-Warner Corporation that operated Norge Division, Borg-Warner Automotive, Inc., and BorgWarner Morse Tec Inc.). As noted above, the court's August 3, 2007 order did not address any legal theory that might make a parent corporation liable for the acts of its subsidiary. Accordingly, Burns may or may not be responsible for the CERCLA liability of BorgWarner Morse Tec Inc. This court has not been presented with nor asked to adjudicate any particular theory of liability.[7]

---

[7] It should also go without saying that the court's present order, like its previous order, is based upon a limited factual record, and to the extent that the court's recitation of the Byzantine corporate structures of the Borg-Warner entities is

11

**IV. Conclusion**

As set forth above, DTSC's motion for reconsideration is GRANTED. The court's August 3, 2007 order is VACATED to the extent it is inconsistent with the present order. Because no party has requested that the court reverse its dismissal of Burns, however, that portion of the court's order, and the removal of entry of default, stand.

IT IS SO ORDERED.

DATED: September 13, 2007.

LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT

---

inaccurate, this order should not be binding on any future court.