1  EDMUND G. BROWN JR.
   Attorney General of the State of California
2  JANET GAARD
   Chief Assistant Attorney General
3  KEN ALEX
   Senior Assistant Attorney General
4  SALLY KNOX
   Supervising Deputy Attorney General
5  CHRISTOPHER CROOK (S.B. # 50339)
   KIRK McINNIS (S.B. # 130952)
6  TIMOTHY E. SULLIVAN (S.B. # 197054)
   Deputy Attorneys General
7  1515 Clay Street, 20th Floor
   P.O. Box 70550
8  Oakland, CA  94612-0550
   Telephone:  (510) 622-4038
9  Fax:  (510) 622-2270
   Email:  Timothy.Sullivan@doj.ca.gov

10

   Attorneys for Plaintiff California
11 Department of Toxic Substances Control

12

13              UNITED STATES DISTRICT COURT

14          FOR THE EASTERN DISTRICT OF CALIFORNIA

15

16  **California Department of Toxic Substances**        Civ. S-02-2389 LKK DAD
    **Control,**
17
                                    Plaintiff,          **SETTLEMENT AGREEMENT AND**
18                                                       **CONSENT DECREE BETWEEN**
              v.                                         **DTSC AND RICHARD PETERS,**
19                                                       **RAMONA PETERS, AND THE**
    **Payless Cleaners, et al.,**                        **PETERS FAMILY TRUST**
20
                                    Defendants.
21

22

23                  <u>**INTRODUCTION**</u>

24          Plaintiff, the California Department of Toxic Substances Control ("DTSC"), filed a

25  second amended complaint on December 8, 2004, (the "Complaint") in the United States

26  District Court for the Eastern District of California (the "Court"), pursuant to the

27  Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42

28  U.S.C. §§ 9601 et seq., and California state law governing the release of hazardous substances,

                                          1.

and nuisance. This Consent Decree embodies the settlement reached between DTSC and Defendants Richard Peters, Ramona Peters, and the Peters Family Trust (collectively referred to herein as "Settling Defendants").

The Court, on the motion and with the consent of DTSC and the Settling Defendants, hereby **ORDERS, ADJUDGES, AND DECREES** as follows:

1. **DEFINITIONS**

A. All terms used in this Consent Decree that are defined in section 101 of CERCLA, 42 U.S.C. § 9601, shall have the same meaning set forth in that section.

B. "DTSC," as used in this Consent Decree, shall mean DTSC, its predecessors including, but not limited to, the Toxic Substances Control Program of the State of California Department of Health Services, and its successors.

C. "Southwest Chico Plume" means both the soil and groundwater existing in the shallow, intermediate, and/or lower aquifers underlying the city of Chico mostly south of Big Chico Creek that are contaminated with perchloroethylene and its breakdown products, the area of which is roughly represented by Figure 2 of the "Groundwater Monitoring Report, Third Quarter 2006, Chico Southwest Plume, Chico, California," dated October 20, 2006 (attached hereto as Exhibit A and incorporated herein by this reference), and all locations where such contaminants may come to be located in the future.

D. "Response Costs," as used in this Consent Decree, shall include all costs of "removal," "remedial action," or "response" (as those terms are defined by section 101 of CERCLA), incurred or to be incurred by DTSC in response to the release or threatened release of hazardous substances at, in, or from the Chico Southwest Plume. Said term shall include, but not be limited to, direct labor costs; contractor, consultant and expert costs; travel and any other out-of-pocket expenses; the costs of identifying, developing evidence against, and pursuing claims against persons or entities liable for the release or threatened release of hazardous substances at, in, or from the Chico Southwest Plume; indirect costs; oversight costs; applicable interest charges; and attorneys' fees.

E. "Remedial Action Plan," as used in this Consent Decree, shall mean a

2.

1   remedial action plan prepared to address the release or threatened release of hazardous

2   substances at, in, or from the Chico Southwest Plume and finally approved by DTSC as

3   described in California Health and Safety Code section 25356.1, and also includes any

4   amendments to the remedial action plan that are subsequently approved by DTSC.

5          F.      "Effective Date" is the day on which this Consent Decree is entered as an

6   order of the Court.

7   2.     **RECITALS**

8          A.      DTSC is the California state agency with primary jurisdiction over the

9   response to the release and threatened release of hazardous substances at, in, or from the Chico

10  Southwest Plume.

11         B.      By and through its Complaint, DTSC seeks to recover jointly and

12  severally from the Settling Defendants, and other defendants who are not parties to this Consent

13  Decree, all costs it has incurred in response to releases and/or threatened releases of hazardous

14  substances at, in, or from the Chico Southwest Plume, pursuant to section 107(a) of CERCLA.

15  DTSC also seeks a declaratory judgment that defendants are jointly and severally liable for all

16  additional costs incurred by DTSC in response to the releases and/or threatened releases of

17  hazardous substances at, in, or from the Chico Southwest Plume pursuant to section 113(g)(2) of

18  CERCLA, 42 U.S.C. § 9613(g)(2).  DTSC alleges that it will continue to incur Response Costs

19  until the remedy selected in the Remedial Action Plan, and implementation, operation and

20  maintenance of that remedy, is completed.  DTSC also seeks injunctive relief to abate a public

21  nuisance (California Health and Safety Code section 58009) and to abate an imminent or

22  substantial endangerment to public health and safety or to the environment (California Health

23  and Safety Code section 25358.3).

24         C.      By entering into this Consent Decree, the Settling Defendants make no

25  admission of liability.

26         D.      Each of the parties to this Consent Decree represents and acknowledges

27  that, in deciding whether to enter into this Consent Decree, it has not relied on any statement of

28  fact, statement of opinion, or representation, express or implied, made by any other party to this

3.

Consent Decree. Each of the parties to this Consent Decree has investigated the subject matter of this Consent Decree to the extent necessary to make a rational and informed decision to execute it, and has had the opportunity to consult independent counsel.

E. DTSC and the Settling Defendants agree that settlement without further litigation and without the admission or adjudication of any issue of fact or law is the most appropriate means of resolving this action. This Consent Decree was negotiated and executed by DTSC and the Settling Defendants in good faith to avoid prolonged and complicated litigation. DTSC, moreover, has negotiated and executed this Consent Decree to further the public interest and to protect human health and the environment.

3. **JURISDICTION**

This Court has jurisdiction over DTSC's federal law claims, which arise under CERCLA, pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 9613(b). This Court has jurisdiction over DTSC's state law claims under the supplemental jurisdiction provision of 28 U.S.C. § 1367(a) and under 28 U.S.C. § 2201, in that the state and federal claims arise from common facts relating to the release of hazardous substances and remediation of or failure to remediate the resulting contamination. This Court has personal jurisdiction over each of the parties to this Consent Decree. Venue is proper in the Eastern District of California pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. § 9613(b). This Court, further, has the authority to enter this Consent Decree as a consent decree of the Court.

4. **SETTLEMENT OF DISPUTED CLAIMS**

4.1 This Consent Decree represents a fair, reasonable, and equitable settlement of the matters addressed herein.

4.2 For the purposes of this Consent Decree, the Settling Defendants admit none of the allegations of the Complaint. Nothing in this Consent Decree shall be construed as an admission of any issue of law or fact or of any violation of law. Notwithstanding the foregoing, each of the Settling Defendants acknowledges its responsibility pursuant to this Consent Decree to perform those acts it has agreed to undertake in this Consent Decree, and shall not deny such responsibility in any proceeding brought by DTSC to enforce this Consent

4.

1  Decree.

2      4.3    Except as set forth in section 11 of this Consent Decree, nothing in this

3  Consent Decree shall prejudice, waive, or impair any right, remedy or defense that the Settling

4  Defendants may have in any other or further legal proceeding.

5      5.    **PAYMENTS BY SETTLING DEFENDANTS**

6      5.1    Upon the Effective Date, the Peterses shall be liable to DTSC for a total

7  payment of three hundred fifty thousand dollars ($350,000.00).  Within thirty (30) calendar days

8  of the Effective Date, the Peterses shall pay this amount to DTSC as described below in

9  section 5.3.

10      5.2    The $350,000.00 payment described in section 5.1 above includes a

11  payment of $30,000.00 for certain future land use covenant administrative costs to be incurred

12  by DTSC which are specified in the Land Use Covenant to be recorded pursuant to section 6.2

13  below.

14      5.3    Payment described in section 5.1 will be made by check made out to the

15  California Department of Toxic Substances Control and identified with the Court's docket

16  number of this case and "Site No. 100504."  Payment shall be mailed to:

17          Department of Toxic Substances Control
           Cashier, Hazardous Substance Account
18          P. O. Box 806
           Sacramento, CA 95812-0806
19
   A copy of the check shall be mailed to:
20
           Jim Tjosvold
21          Chief, Northern California Central Cleanup Operations Branch
           Department of Toxic Substances Control
22          8800 Cal Center Drive
           Sacramento, CA 95826-3200
23          Attn: Donald Mandel, Project Manager for Chico Southwest Plume

24          Timothy E. Sullivan
           Office of the Attorney General
25          P.O. Box 70550
           Oakland, CA 94612
26

27

28

                                      5.

6.    **OBLIGATIONS OF THE PETERSES**

6.1    Immediately upon entry of this Consent Decree, the Peterses will require their consultants and contractors to provide to DTSC in electronic format historical site data, site figures, groundwater model files, and word processing files containing the text of final reports previously submitted to DTSC in paper form by the Peterses, to the extent those items are available in electronic format.

6.2    Within five calendar days of the Effective Date of this Consent Decree, the Peterses shall record a Land Use Covenant substantially in the form specified in Exhibit B that is enforceable under the laws of California.

6.3    Except as otherwise stated in sections 6.1 and 6.2, nothing in this Consent Decree requires the Peterses to conduct or pay for any further work in the Chico Southwest Plume.

7.    **[RESERVED]**

8.    **GOVERNMENT LIABILITIES**

Neither DTSC nor any other department or agency of the State of California shall be liable for any injuries or damages to persons or property resulting from acts or omissions by the Settling Defendants in carrying out activities pursuant to this Consent Decree. Neither DTSC nor any other department or agency of the State of California shall be held as a party to any contract entered into by the Settling Defendants or their agents in carrying out activities pursuant to this Consent Decree unless the contract is entered into in writing by DTSC or such other department or agency of the State of California.

9.    **COVENANT NOT TO SUE BY DTSC**

9.1    Except as specifically provided in sections 9.2 and 10, below, and except as may be necessary to enforce the terms of this Consent Decree, as of the date this Consent Decree is entered as a consent decree of the Court, DTSC covenants not to sue the Settling Defendants for "Matters Addressed" by this Consent Decree. "Matters Addressed" includes any and all civil liability for reimbursement of all or any portion of DTSC's Response Costs, past or future, declaratory relief, injunctive relief or any other relief under CERCLA, the Carpenter-

6.

Presley-Tanner Hazardous Substance Account Act, California Health & Safety Code sections 25300 et seq., or common law for liability for Response Costs and/or response actions, with regard to releases or threatened releases of perchloroethylene and its breakdown products originating at the location known as 254 East First Street, Chico, California (Butte County Assessor's Parcel No. 03-19-0-020), including releases or threatened releases of perchloroethylene and its breakdown products at, in, or from the Chico Southwest Plume, as set forth in the Complaint, and releases or threatened releases of perchloroethylene and its breakdown products at, in, or from the area of contamination known as the Chico Central Plume.

9.2     "Matters Addressed" shall not include, and the covenant not to sue set forth in section 9.1 above does not pertain to, any matters other than those expressly specified in section 9.1. DTSC reserves, and this Consent Decree is without prejudice to, all rights, claims and causes of action DTSC may have against the Settling Defendants with respect to all other matters, including releases or threatened releases of hazardous substances in the city of Chico other than: releases or threatened releases of perchloroethylene and its breakdown products originating at the location known as 254 East First Street, Chico, California (Butte County Assessor's Parcel No. 03-19-0-020), including releases or threatened releases of perchloroethylene and its breakdown products at, in, or from the Chico Southwest Plume, as set forth in the Complaint, and releases or threatened releases of perchloroethylene and its breakdown products at, in, or from the area of contamination known as the Chico Central Plume.

10.     **RESERVATION OF RIGHTS**

10.1     The Covenant Not to Sue set forth in section 9.1 above does not pertain to the following matters, which DTSC reserves, and this Consent Decree is without prejudice to all rights and claims of DTSC against the Settling Defendants with respect to the following:

(a)     failure of the Settling Defendants to meet the requirements of this Consent Decree;

(b)     damage to natural resources, as defined in section 101(6) of CERCLA, 42

7.

1    U.S.C. § 9601(6), including all costs incurred by any natural resources

2    trustees; and

3         (c)    criminal liability.

4         10.2    Except as expressly provided in this Consent Decree, nothing in this

5    Consent Decree is intended nor shall it be construed to preclude DTSC from exercising its

6    authority under any law, statute or regulation.  Furthermore, nothing in this Consent Decree is

7    intended, nor shall it be construed, to preclude any other state agency, department, board or

8    entity or any federal entity from exercising its authority under any law, statute or regulation.

9         11.    **COVENANT NOT TO SUE BY THE SETTLING DEFENDANTS**

10         11.1    The Settling Defendants covenant not to sue, and agree not to assert any

11    claims or causes of action against, DTSC, or its contractors or employees, for any costs or

12    damages the Settling Defendants might incur or for any injuries or losses the Settling

13    Defendants might suffer as a result of its performance of the requirements of this Consent

14    Decree.  The Settling Defendants further covenant not to sue, and agree not to assert any claims

15    or causes of action against, DTSC, or its contractors or employees, for any and all civil liability

16    for reimbursement of all or any portion of the Settling Defendants' response costs, past or

17    future, declaratory relief, injunctive relief or any other relief under CERCLA, the Carpenter-

18    Presley-Tanner Hazardous Substance Account Act, California Health & Safety Code sections

19    25300 et seq., or common law for liability for response costs and/or response actions, with

20    regard to releases or threatened releases of perchloroethylene and its breakdown products at, in,

21    or from the Chico Southwest Plume.

22         12.    **EFFECT OF CONSENT DECREE**

23         12.1    This Consent Decree constitutes the resolution of the Settling

24    Defendants' liability to DTSC with respect to the Matters Addressed in a judicially approved

25    settlement within the meaning of section 113(f)(2) of CERCLA, 42 U.S.C. § 9613(f)(2).

26         12.2    Accordingly, upon entry of this Consent Decree as a consent decree of the

27    Court, and provided that each Settling Defendant performs all of its obligations under this

28    Consent Decree, each Settling Defendants shall be entitled, as of the date this Consent Decree is

8.

entered as a consent decree of the Court, to protection against all claims for contribution, pursuant to section 113(f)(2) of CERCLA, 42 U.S.C. § 9613(f)(2), for the Matters Addressed by this Consent Decree (as described in section 9), to the fullest extent permitted by law.

12.3     Except as specifically provided in this Consent Decree, nothing in this Consent Decree is intended, nor shall be construed, to waive, release, or otherwise affect any right, claim, or cause of action held by any party to this Consent Decree against, or to provide a covenant not to sue to, any third person not a party to this Consent Decree, or to in any way limit, restrict, or impair the right of any party to this Consent Decree to assert rights, claims, causes of actions, and defenses against any third person not a party to this Consent Decree, including without limitation, the right to seek payment, reimbursement, contribution, or indemnity from such persons for obligations incurred or to be incurred, or actions taken or to be taken, under this Consent Decree.  Except as specifically provided in this Consent Decree, DTSC and the Settling Defendants expressly reserve any rights, claims, or causes of actions they might have against any third person not a party to this Consent Decree.

12.4     This Consent Decree is contingent and dependent on all of its terms being approved and entered by the Court.  If the Court does not approve and enter this Consent Decree, DTSC and the Settling Defendants reserve all of their respective rights, remedies, and defenses.

12.5     This Consent Decree is not intended, nor shall it be construed, to limit or otherwise affect DTSC's right to select a remedial action for the Chico Southwest Plume or the Chico Central Plume.

13.     **RETENTION OF RECORDS**

13.1     The Settling Defendants shall provide to DTSC, upon request, copies of all documents and information within their possession or control or that of their contractors or agents relating to the implementation of this Consent Decree, including, but not limited to design specifications, reports of construction activities, contracts, invoices, sampling, analysis, chain of custody records, manifests, trucking logs, receipts, reports, sample traffic routing, correspondence, easements, permits, grants of access to public property, and city government

9.

resolutions. Such records shall be preserved by the Settling Defendants until 10 years after the Effective Date, or 10 years after creation of a record or document, whichever is later.

      13.2    The Settling Defendants may assert that certain documents, records, and other information are privileged under the attorney-client privilege or any other privilege recognized by law. If the Settling Defendants assert such a privilege, they shall provide DTSC with the following: (1) the title of the document, record, or information; (2) the date of the document, record, or information; (3) the name and title of the author of the document, record, or information; (4) the name and title of each addressee and recipient of the document, record, or information; (5) a description of the subject of the document, record, or information; and (6) the privilege asserted by the Settling Defendants. However, no documents, records, or other information created or generated pursuant to the requirements of the Consent Decree shall be withheld on the grounds that they are privileged. If a claim of privilege applies only to a portion of a document, the document shall be provided to DTSC in redacted form to mask the privileged information only. The Settling Defendants shall retain all records and documents they claim to be privileged until DTSC has had a reasonable opportunity to dispute the privilege claim and any such dispute has been resolved in the Settling Defendants' favor.

## 14.   **NOTIFICATION**

      14.1.   Notification to or communication between the parties to this Consent Decree as required or provided for in this Consent Decree shall be addressed as follows (except that information required to be sent to DTSC pursuant to section 6 shall be sent only to Mr. Tjosvold):

As to DTSC:

        Jim Tjosvold
        Chief, Northern California Central Cleanup Operations Branch
        Department of Toxic Substances Control
        8800 Cal Center Drive
        Sacramento, CA 95826-3200
        Attn: Donald Mandel, Project Manager for Chico Southwest Plume
        facsimile: (916) 255-3696

10.

1    Judith Tracy, Esq.
     Office of Legal Counsel
2    Department of Toxic Substances Control
     1001 "I" Street
3    P.O. Box 806
     Sacramento, CA 95812
4    facsimile: (916) 323-5542

5    Timothy E. Sullivan, Esq.
     Deputy Attorney General
6    California Department of Justice
     1515 Clay Street, 20th Floor
7    P.O. Box 70550
     Oakland, CA 94612-0550
8    facsimile: (510) 622-2270

9    As to the Peterses:

10   Jan A. Greben, Esq.
     Greben & Associates
11   1332 Anacapa Street, Suite 110
     Santa Barbara, CA 93101
12   facsimile: (805) 963-9098

13          14.2.    Upon 10 days notice to the other party, a party to this Consent Decree

14   may substitute another person for an addressee named above to receive notifications or

15   communications as required or provided for in this Consent Decree.

16          15.    **MODIFICATION OF CONSENT DECREE**

17          This Consent Decree may only be modified upon the written agreement of DTSC

18   and the Settling Defendants and the approval of the Court, or upon order of the Court after

19   noticed motion by a party to this Consent Decree.

20          16.    **APPLICATION OF CONSENT DECREE**

21          This Consent Decree shall apply to and be binding upon DTSC, the Settling

22   Defendants, and each of their respective successors and assigns.  The provisions of this Consent

23   Decree shall inure to the benefit of DTSC, the Settling Defendants, and each of their respective

24   successors and assigns.  The provisions of this Consent Decree shall also inure to the benefit of

25   the employees, agents, and partners of the Settling Defendants, in their capacities as such.

26          17.    **AUTHORITY TO ENTER**

27          Each signatory to this Consent Decree certifies that he or she is fully authorized

28   by the party he or she represents to enter into this Consent Decree, to execute it on behalf of the

11.

party represented, and legally to bind that party.

18. **INTEGRATION**

This Consent Decree, including the exhibits and other materials incorporated herein by reference, constitutes the entire agreement between DTSC and the Settling Defendants and may not be amended or supplemented except as provided for in this Consent Decree.

19. **RETENTION OF JURISDICTION**

The Court shall retain jurisdiction of this matter for the purpose of enforcing the terms of this Consent Decree.

20. **EXECUTION OF DECREE**

This Consent Decree may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

21. **INTERPRETATION**

California law governs the interpretation of this Consent Decree. This Consent Decree shall be deemed to have been drafted equally by all parties hereto.

22. **ATTORNEYS FEES AND COSTS**

As to each other, each party to this Consent Decree shall bear its own costs, attorneys' fees, expert witness fees and all other costs of litigation. This paragraph shall have no effect on the parties' right to recover these fees or costs from any other party.

23. **APPROVALS OF PARTIES**

Plaintiff DTSC consents to this Consent Decree by its authorized representative as follows:

CALIFORNIA DEPARTMENT OF
TOXIC SUBSTANCES CONTROL

Dated: __4/10/08_____        __/s/ James Tjosvold_____
                              James Tjosvold
                              Chief, Northern California-Central Cleanup
                               Operations Branch
                              California Department of Toxic Substances Control

12.

The Peterses consent to this Consent Decree:

RICHARD PETERS

DATED: __4/15/08__                        __/s/ Richard Peters_____
by Ramona Peters, guardian ad litem

RAMONA PETERS

DATED: __4/15/08__                        __/s/ Ramona Peters_____

PETERS FAMILY TRUST

DATED: _____             __/s/ Ramona Peters_____
By:

Title:

APPROVED AS TO FORM:

Dated: __3/26/08_____             EDMUND G. BROWN JR.
Attorney General of the State of California
JANET GAARD
  Chief Assistant Attorney General
KEN ALEX
  Senior Assistant Attorney General
SALLY KNOX
  Supervising Deputy Attorney General
CHRISTOPHER CROOK
KIRK McINNIS
  Deputies Attorney General

By  __/s/ Timothy E. Sullivan_____
TIMOTHY E. SULLIVAN
Deputy Attorney General
Attorneys for Plaintiff California
Department of Toxic Substances Control

Dated: __4/16/08_____

By  __/s/ Jan A. Greben_____
JAN A. GREBEN, ESQ.
Greben & Associates
Attorneys for Richard C. Peters and
Ramona W. Peters, individually and as
trustees of the Peters Family Trust

13.

The hearing set for May 20, 2008 at 11:00 a.m. is VACATED.

**IT IS SO ORDERED, ADJUDGED AND DECREED:**

Dated: May 8, 2008

LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT

14.